## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **SHERRY BONNER, as Mother and Legal Custodian of X.W., a minor,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **CIVIL ACTION NO: 2:23-cv-558-KFP** |
| **ALABAMA DEPARTMENT OF HUMAN RESOURCES; NANCY BUCKNER, in her official capacity as the Commissioner of the Alabama Department of Human Resources; CLEBURNE COUNTY DEPARTMENT OF HUMAN RESOURCES; MARSHA BUSBY, in her official capacity as the Director of the Cleburne County Department of Human Resources; ALABAMA DEPARTMENT OF EDUCATION; STATE BOARD OF EDUCATION; ERIC MACKEY, in his official capacity as the State Superintendent of the Alabama Department of Education, et al.,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

## DEFENDANTS CLEBURNE COUNTY DEPARTMENT OF HUMAN RESOURCES AND MARSHA BUSBY'S MOTION TO DISMISS AMENDED COMPLAINT

COME NOW Defendants Cleburne County Department of Human Resources (CCDHR) and Marsha Busby in her official capacity as Director of CCDHR, by and through the undersigned counsel, and hereby move this Court to dismiss all claims.

In support of this motion, these Defendants show as follows:

The Plaintiff claims Defendant CCDHR and Director Busby have violated her minor child's rights under Title II of the Americans with Disabilities Act because CCDHR, Director Busby, and other Defendants failed to provide an appropriate education to the minor, identified as X.W., while attending school in one or more Specialized Treatment Centers at Psychiatric Residential Treatment Facilities. The claims against CCDHR and Director Busby are due to be dismissed for the following reasons:

1.      The Plaintiff lacks standing to bring these claims against these Defendants.

2.      CCDHR and Director Busby have no lawful authority to act as to education in Alabama.

3.      DHR does not have statutory authority to administer education programs in Alabama.

4.      The Plaintiff fails to allege any cognizable discrimination.

5.      The Plaintiff has failed to allege deliberate indifference by CCDHR or Director Busby.

## I.   __BACKGROUND.__

The Alabama Department of Human Resources (SDHR) has worked in

partnership with the United States Department of Justice (DOJ) and Alabama State Department of Education (ALSDE) since June 2019 in DOJ's inquiry related to allegations that children were being discriminated against in terms of educational opportunities at Psychiatric Residential Treatment Facilities (PRTFs). SDHR provided DOJ voluminous records for over nine hundred children. Further, the SDHR asked multiple times for preliminary information from DOJ so that remedial measures could be made for specific concerns, as opposed to global concerns of the investigation.   DOJ declined to provide any information aside from the global concerns of its investigation.

The finding stated in the DOJ letter, which the Plaintiff attached as Exhibit A to the Amended Complaint (Doc. 19-1), is a generalized synopsis of DOJ's investigation without specific findings for X.W. or any facility. As noted, SDHR cooperated extensively with the investigation, which DOJ noted specifically, "We would like to acknowledge the assistance and cooperation of the State's counsel and officials throughout our investigation." (Doc. 19-1, p. 3).

On December 6, 2023, the Plaintiff filed an Amended Complaint against Defendants Commissioner Nancy Buckner, State Education Superintendent Eric Mackey, Director Marsha Busby and others, alleging discriminatory conduct pursuant to Title II of the Americans with Disabilities Act.  The Plaintiff alleges DOJ issued

a letter stating a conclusion that the State of Alabama has engaged in discriminatory practices against children who reside at Psychiatric Residential Treatment Facilities (PRTFs). However, there is much more to this story than the DOJ's letter or the Plaintiff reveal.

A.    **The Organizational Structure of The Alabama Department of Human Resources And Child Welfare Programs.**

SDHR is the state agency which is tasked with, among other things, promulgating rules for the protection of dependent children in the state. *Ala. Code* §§ 26-14-1 (1975), *et seq.*, 12-15-301, *et seq.*, *Ala. Admin. Code* § 660-5-28-03. To accomplish this, the legislature created separate county human resource agencies which respond to the needs of their local communities given the vast differences throughout the State of Alabama. *Ala. Code* §§ 38-2-7, 38-2-8. One of the primary functions of the county departments is to complete child abuse and neglect (CA/N) investigations. In order to protect children whose health and welfare may be adversely affected through abuse and neglect, the legislature created a framework for reporting such cases to the appropriate authorities such as DHR. *Ala. Code* § 26-14-2 (1975). DHR has investigative responsibilities for CA/N reports. *Ala. Code* § 26-14-7 (1975). The county DHR completes a written report of the investigation, its recommendations and a case summary, including services offered and accepted, and

submits the report to the state's central registry.[1] *Ala. Code* § 26-14-7(d) (1975). In order to protect children, the county departments may need to initiate an action in juvenile court.

The juvenile court has "exclusive original jurisdiction" of proceedings in which there are allegations of a child being delinquent, dependent or in need of supervision. *Ala. Code (1975)* § 12-15-114(a). In any case in which the juvenile court has jurisdiction, the court shall maintain jurisdiction over an individual of any age to enforce or modify any prior orders of the juvenile court unless otherwise provided by law. *Ala. Code* § 12-15-114(c).

A dependent child is a child that has been adjudicated dependent by the juvenile court, is in need of care or supervision and meets any of the circumstances enumerated in *Ala. Code* § 12-15-102(8). One such ground is that the child has been subjected to abuse or neglect by the parent, legal guardian, legal custodian, or other custodian or that the child was allowed to be so subjected. Abuse or neglect is defined in *Ala. Code* § 12-15-301.

---

[1]  The Department maintains a central registry that contains information regarding the written report including the final disposition. The disposition can be "Indicated", i.e., there is credible evidence and professional judgment that substantiates that an alleged perpetrator is responsible for child abuse or neglect, or "Not Indicated", which means the allegations were not substantiated based upon credible evidence and professional judgment. *Ala. Code* § 26-14-8(a) (1975). Pursuant to *Ala. Code* § 26-14-12 (1975), the State Department of Human Resources may establish such regulations as may be necessary to implement Chapter 14 of the Act.

SDHR has the duty and responsibility to designate county departments as its agents under its rules and regulations to perform any of the State DHR's functions. *Ala. Code* § 38-2-6(6). Each county in Alabama has a county board of human resources, which appoints a county director, "who shall be the executive officer of the county department," and meets with the county director to point out unmet needs in the county, advise concerning economic conditions in the county which might affect the welfare program, assist in informing the citizens of the public welfare program, cooperate with other agencies, individuals and organizations in the community in the development of facilities designed for human betterment, and advise concerning changes that would make a more effective and efficient public welfare program. *Ala. Code* § 38-2-7. The county departments consist of the county director of human resources and "such other officers and employees as the county board and state department shall deem necessary for the efficient performance of the welfare services of the county." *Ala. Code* § 38-2-8(a). A county director's and county department of human resources's duties are clearly set by statute.

A county director's statutory duties are summarized as follows:

- appoint such staff as may be necessary to administer the county's welfare activities, subject to the approval of the county board and the provisions of the merit system.

6

- meet regularly with the county board to formulate general policies, rules and regulations consistent with the policies, rules and regulations of the State DHR.
- perform all administrative and executive duties of the county board in accordance with the rules and regulations of the State DHR, subject to the approval of the State Board, including:
  - relief to persons in need of assistance.
  - the performance of family welfare services.
  - the care of children who are dependant, neglected, under insufficient guardianship or otherwise handicapped, and such other child-care activities as shall be directed by the State DHR.
  - the investigation of applications for admissions to and discharges from county institutions providing care and treatment of indigents.

*Ala. Code* § 38-2-8.

A county department of human resources's statutory duties are summarized as follows:

- furnish to the county board and the State DHR such reports concerning the activities of the county department and the status of the welfare functions within its jurisdiction as the State DHR shall require.
- if appointed by a court of competent jurisdiction, through its director and assistants, perform under the supervision of such court, the functions of a probation officer of the court having jurisdiction of children who are dependant, neglected, under insufficient guardianship or otherwise handicapped.

*Ala. Code* § 38-2-8(b).

**B.**     **Overview of PRTFs.**

Inpatient psychiatric services for individuals under the age of 21 is an optional

benefit that most states have chosen to provide. These services can be provided in a

7

psychiatric facility for which states may define accreditation criteria subject to the requirements of 42 C.F.R. 441, Subpart D. This benefit is significant as a means for Medicaid to cover the costs of inpatient mental health services. 441 C.F.R. 151(a)(2). Under Alabama Medicaid regulations, inpatient psychiatric services for recipients under age 21 are covered services when provided:

 (a) Under the direction of a physician,

 (b) By a psychiatric hospital enrolled as a Medicaid provider in accordance with Rule No. 560-X-41-.02; or

 (c) By a psychiatric residential treatment facility (PRTF) which is accredited by the Joint Commission on Accreditation of Healthcare Organizations (JCAHO), the Commission on Accreditation of Rehabilitation Facilities (CARF), the Council on Accreditation of Services for Families and Children (COA), or by other accrediting organization with comparable standards that is recognized by the State.

 (d) Before the recipient reaches age 21 or, if the recipient was receiving services immediately before he/she reached age 21, before the earlier of:

  (1) the date he/she no longer requires the services,

  (2) the date he/she reaches age 22, or

  (3) The expiration of covered days as limited in (2) below, and

 (e) To a recipient who is admitted to and remains in the facility for the course of the hospitalization; and

 (f) As certified in writing to be necessary in the setting in which it will be provided in accordance with 42 CFR 441.152.

*Ala. Admin. Code* § 560-X-41-.01.

Alabama Medicaid regulations also govern length of stay. Inpatient psychiatric services for recipients under age 21 are unlimited if medically necessary and the admission and/or the continued stay reviews meet the approved psychiatric criteria. These days do not count against the recipient's inpatient day limitation for care provided in an acute care hospital. *Id*. Residential psychiatric treatment services for recipients under age 21 are unlimited if medically necessary and the admission and continued stay reviews meet the approved psychiatric criteria. All treatment plan updates and certifications of need for services shall be performed as specified in Rule 560-X-41-.06. *Id*.

Recipients seeking admission to a PRTF must meet at least one of the admission criteria listed in 560-X-41-.09(2)(a-d). *Ala. Admin. Code* § 560-X-41-.13. Section 560-X-41-.09(a) provides that all patients seeking admission to a psychiatric hospital must require psychiatric services that can only be provided on an inpatient basis. These psychiatric services must involve implementation of a professionally developed and supervised individualized plan of care. *Ala. Admin. Code* § 560-X-41-.09. The inpatient admission criteria utilized by Medicaid require a documented need for inpatient psychiatric services.

A Certificate of Need (CON) must also be established for admission into a PRTF. For elective or non-emergency admissions of individuals who are Medicaid-

eligible when admitted to the PRTF, a certification of the need for services shall be performed by an independent team that: (a) includes a physician; (b) has competence in diagnosis and treatment of mental illness (preferably in child psychiatry); and (c) has knowledge of the individual's situation. The independent team shall certify that:  (a) ambulatory care resources available in the community do not meet the treatment needs of the recipient; and (b) proper treatment of the recipient's psychiatric condition requires services on an inpatient basis under the direction of a physician; and (c) services can reasonably be expected to improve the recipient's condition or prevent further regression so that inpatient services will no longer be needed. *Ala. Admin. Code* § 560-X-41-.13.

For a child to be placed into a PRTF, the child must suffer from a significant mental health diagnosis or multiple diagnoses, often with accompanying behavioral issues which place them as a risk to themselves or others and be unable to be safely maintained in the general foster care system.  The child's individual needs dictate whether a child is to be placed into a PRTF for treatment.  This is not something the various departments of human resources may do on their own.  Based upon Alabama Medicaid regulations, the placement of a child into a PRTF requires a medical physician to provide a Certificate of Need (CON) for the child to be placed.  *Ala. Admin. Code* §  560-X-41-.04.  That physician must have "competence in diagnosis

and treatment of mental illness" and a "knowledge of the individual's situation." *Ala. Admin. Code* § 560-X-41-.04(4)(a)(1), (2), (3).

## II.   <u>SUMMARY OF THE AMENDED COMPLAINT.</u>

The Plaintiff alleges:

X.W. was placed in several facilities beginning approximately August /September 2018. (Doc. 19, ¶ 12). As a result of his or her placement, X.W. received an education that was inferior. (Doc. 19, ¶ 37).  X.W. was also denied opportunities to interact with non-disabled peers. (Doc. 19, ¶ 38).   X.W. was not provided educational opportunities that comported with his or her abilities.  (Doc. 19, ¶ 39). X.W. did not receive educational or therapeutic support and was substantially behind educationally upon leaving the placement. (Doc. 19, ¶¶ 42, 43). As a result, X.W. has been unable to increase his or her educational or technical abilities and progress. (Doc. 19, ¶ 45).  X.W. also witnessed or suffered restraint and seclusion that he or she believed inappropriate. (Doc. 19, ¶ 44).

The parties are as follows:

X.W. was at the time a minor who was placed by the Defendants in several facilities while in the custody of DHR. (Doc. 19, ¶¶ 12, 14).

Defendant Marsha Busby is the Director of the Cleburne County Department of Human Resources (CCDHR).   (Doc.19, ¶ 18).  CCDHR is also a Defendant. (Doc. 19, ¶ 17).  Director Busby is sued in her official capacity only. (Doc. 19, p. 1).

III.   **LEGAL STANDARD.**

**Rule 12(b)(1) Standard**.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction" *Kokkonen v. Guardian Life Insurance Company of American,* 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994) (internal quotations omitted).   A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack.  "'A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.' (Quotation, citation, and alterations omitted).  By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Staley v. Orlando Regional Healthcare System, Inc.*, 524 F. 3d 1229, 1233 (11th Cir. 2008).

"The statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects." *Friends of Everglades v. United States Environmental Protection Agency*, 699 F.3d 1280, 1288 (11th Cir. 2012); quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S. Ct. 1003 (1998). Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.*" Ianago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1281 (11th Cir. 2012).

Under Rule 12(b)(6), *Fed. R. Civ. P.,* dismissal of the complaint for failure to state a cause of action is appropriate when no construction of the factual allegations of the complaint will support the cause of action. *Marshall County Board of Education v. Marshall County Gas District*, 992 F.2d 1171, 1174 (11th Cir. 1993). The Court may dismiss the complaint only if it is clear that no relief could be granted under any set of facts in support of its claims. *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986).

> A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. Prior to the Supreme Court's recent decision in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007), a motion to dismiss could only be granted if a plaintiff could prove "no set of facts ... which would entitle him to relief." See *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); see also

13

*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986). Now, in order to survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. At 1974. While the factual allegations of a complaint need not be detailed, a plaintiff must nevertheless "provide the 'grounds' of his 'entitlement to relief' and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1965. The plaintiff's "[f]actual allegations must be enough to raise a right to relief above a speculative level on the assumption that the allegations in the complaint are true." *Id*. It is not sufficient that the pleadings merely "le[ave] open the possibility that the plaintiff might later establish some set of undisclosed facts to support recovery." *Id*. at 1968 (internal quotation and altercation omitted). In considering a defendant's motion to dismiss, a district court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the plaintiff. See *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). *Accord Nelson v. Campbell*, 541 U.S. 637, 640 (2004) (where a court is considering dismissal of a complaint at the pleading stage, it must assume the allegations of the complaint are true).

*McClesky v. City of Dothan, Alabama*, 2009 WL 4671454, at *3 (M.D. Ala. December 3, 2009).

The Court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 566 U.S. 662 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, the court makes reasonable inferences in the plaintiff's favor, "but [is] not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir.

14

2005).  Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations.  *Id*.; *see also Iqbal*, 129 S. Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

## IV.   LEGAL ARGUMENT.

### A.   Plaintiff Lacks Standing Against CCDHR and Director Busby For This Claim.

"[T]he irreducible constitutional minimum of standing contains three elements."  *Defs. of Wildlife v. Lujan*, 504 U.S. 555, 560 (1992).  "For a party to have standing to bring a lawsuit, it must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"  *Muransky v. Godiva Chocolatier, Inc.* 979 F.3d 917, 924 (11th Cir. 2020) (*en banc*) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).

Standing requires the alleged injuries to be "fairly traceable to the *challenged action of the defendant*."  *Doe v. Pryor*, 344 F.3d 1282, 1285 (11th Cir. 2003) (citing *Lujan*, 504 U.S. at 560) (emphasis in original).  In other words, a plaintiff's injuries must be redressable by an action against a particular defendant.  *See Id*.  ("Even if we assume that all of those alleged injuries meet the *Lujan* injury-in-fact requirement,

[plaintiff] still does not have standing to bring this claim because her injuries are not fairly traceable to the Alabama Attorney General, and they cannot be redressed through this action against him."); *Collins v Yellen*, 141 S. Ct. 1761, 1799 (2021) ("[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged."). Courts can "enjoin executive officials from taking steps to enforce a statute . . . only when the officials who enforce the challenged statute are properly made parties to a suit." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1255 (11th Cir. 2020).

The Eleventh Circuit's decision in *Jacobson* controls the standing analysis here. In *Jacobson*, plaintiffs sued the Florida Secretary of State for injunctive and declaratory relief regarding the ordering of candidates on ballots. The district court "permanently enjoined the Secretary and 67 Supervisors of Elections from implementing the ballot-order statute," even though the supervisors were not parties to the lawsuit. *Id*. at 1244. In reversing the order, the Eleventh Circuit found the "district court acted ultra vires by ordering relief that it had no jurisdiction to award." *Id*. at 1245. The court explained, "[a] declaratory judgment against the Secretary does not bind the Supervisors," who were not parties to the action. *Id*. at 1254. Because the Secretary did not control ballot order – the Supervisors did – the plaintiffs could

not establish standing to sue *the Secretary*, and the case against him was due to be dismissed.

The same is true here.  Under Alabama law, the county departments of human resources and their directors, including Director Busby, have statutorily prescribed duties. *Ala. Code* §§ 38-2-7,-8. Relevant here, another official and state agency – the State Superintendent of Education and Alabama State Department of Education – manage public education in the State of Alabama.  Neither SDHR nor CCDHR (together "DHR") had authority to conduct an educational screening. *Ala. Code* § 16-39-1, *et seq*.; *Ala. Admin. Code* § 290-8-9-00(20), -.02. DHR had no authority to institute an Individualized Education Plan (IEP) for X.W. or determine eligibility for services.  *Ala. Admin. Code* §290-8-9-.04, 05. DHR had no authority to serve as a parent or surrogate for a child in educational decision making. 34 C.F.R. § 300.519; *Admin. Ala. Code* §290-8-9-.00(14), (25), -.08.  Moreover, DHR does not issue endorsements for Specialized Treatment Centers. *Ala. Code* § 16-14-13 (1975).

These processes do not involve, in any way, SDHR, the county departments of human resources or their directors.  As a result, "any injury [Plaintiffs] might suffer is neither fairly traceable to the [Director] nor redressable by a judgment against her because she does not enforce the challenged law." *Jacobson*, 974 F.3d at 1241.  This Court "lack[s] authority to enjoin those officials in this suit, so it [is] powerless to

provide redress." *Id*. at 1241-42.  Plaintiff therefore lacks standing, and the Amended Complaint is due to be dismissed.

**B.**    **All Claims Are Due To Be Dismissed As To CCDHR And Director Busby Because The Alabama Department of Human Resources Has No Authority Over Educational Programs.**

The Plaintiff's claims against CCDHR and Director Busby should be dismissed for failing to allege SDHR, CCDHR or Director Busby "administers" educational programs within the meaning of 28 C.F.R. § 35.130. The Plaintiff has generally asserted "Defendants are public entities subject to Title II of the ADA, 42 U.S.C. § 12131." (Doc. 19, ¶ 47).  Yet, this is a broad, unsupported legal conclusion by the Plaintiff and is not entitled to a presumption of accuracy. *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011). Such a statement does not show the Plaintiff is entitled to relief from CCDHR or director Busby for a Title II claim.

The Plaintiff misconstrues the letter of DOJ as stating findings against the SDHR. In order to have liability for these claims, the SDHR would have to have an obligation to provide educational services to these children.  The State of Alabama has elected to limit obligations to specific state agencies and boards for legitimate reasons. *Bacon v. City of Richmond, Virginia*, 475 F.3d 633 (641 (4th Cir. 2007). Thus, SDHR is a state agency with very specific, statutory responsibilities. *See generally Ala. Code* §§ 38-2-1, *et seq*., 26-14-1, *et seq*., 12-15-301, *et seq.,* 38-9-1,

*et seq.*   Nowhere in these statutes is SDHR or its county departments of human resources or their directors given the obligation to administer an educational program. Rather, as noted above, the obligation to provide education to children in the State of Alabama is that of the ALSDE.  *See generally Ala. Code* § 16-4-5. The lawful requirement to regulate and monitor the educational component of Residential Treatment Facilities is also that of ALSDE.  *Ala. Admin. Code* § 290-8-8-.01, *et seq*.

The Plaintiff alleges that 28 C.F.R. § 35.130(d) requires public entitles to "administer services, programs and activities in the most integrated setting appropriate to the needs of the qualified individuals with disabilities." (Doc. 19, ¶ 6). In *Bacon v. City of Richmond*, 475 F.3d 633 (4th Cir. 2007), the Fourth Circuit Court of Appeals reversed a lower court finding against the City of Richmond, determining that the city was not responsible for the administration of funding it provided to the school because the State of Virginia had a legitimate, long-standing reason to divide authority between different governmental bodies and the "school board had 'exclusive control' over the schools' day-to-day operation."  *Id*. at 640-642.

> To make funding entities responsible for the statutory violations of funding recipients would stretch the contours of Title II.  Title II does not contemplate funding liability for an independent public entity that neither controls the challenged services nor discriminated against plaintiffs because of disability.  It does not impose guarantor liability or make funding entities ADA insurers for funding recipients.  To the contrary, the plain text of Title II limits responsibility to public entities

that discriminate against or exclude persons with disabilities from the services, programs, or activities administered by the entity.

*Id.* at 642.

As in *Bacon*, SDHR, CCDHR and Director Busby lack authority to administer educational programs anywhere, including Residential Treatment Facilities. The State of Alabama has made a clear election through its statutory law to delegate educational regulatory authority to ALSDE. As a result, there cannot be liability against CCDHR or Director Busby.

## C. The Amended Complaint Fails To Allege Cognizable Discrimination.

The Plaintiff's Amended Complaint fails sufficiently to allege as to DHR unjustified isolation or a failure to satisfy integration, as required under 28 C.F.R. § 35.130(d). An "integration mandate" appears in this regulation that requires a "public entity [to] administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). In *Olmstead v. L.C.*, 527 U.S. 581 (1999), the United States Supreme Court stated a three-part test for discrimination under the ADA on the basis of unjustified isolation:

> (1) "the State's treatment professionals have determined that community placement is appropriate" for the individual; (2) the "affected individual" agrees with the treating professional's recommendation for community care; and (3) the reasonableness of mandating an

accommodation, "taking into account the resources available to the State and the needs of others with mental disabilities." *Olmstead*, 527 U.S. at 587, 119 S. Ct. at 2181.

*United States v. Mississippi*, 82 F.4th 387, 394 (5th Cir. 2023).

DHR placed X.W. at a PRTF by the authority of a treating physician. *Ala. Admin. Code* § 560-X-41-.03(4)(a)(1), (2), (3). To the extent DHR had authority to make decisions, it did so in reliance on the advice and consent of a treating psychiatrist and a treatment team to ensure X.W.'s safety. *Ala. Admin. Code* § 560-X-41-.03(4)(a). SDHR and the county departments' authority is geared toward placement. *See Ala. Code* § 12-15-314. Yet, the Plaintiff implies that SDHR somehow was to conduct a "screening process...to determine the greatest point of educational integration available to X.W." (Doc. 19, ¶ 36). SDHR had no authority to conduct an educational screening. *Ala. Code* § 16-39-1, *et seq.*; *Ala. Admin. Code* § 290-8-9-00(20), -.02. DHR had no authority to institute an Individualized Education Plan (IEP) or determine eligibility for services. *Ala. Admin. Code* § 290-8-9-.04, 05. DHR had no authority to serve as a parent or surrogate for a child in educational decision making. 34 C.F.R. § 300.519; *Ala. Admin. Code* § 290-8-9-.00(14, (25), -.08. Because SDHR lacks statutory authority to make education decisions for X.W., CCDHR and Director Busby are due to be dismissed.

**D.** **The Plaintiff Has Failed To Plead CCDHR And Director Busby Were Deliberately Indifferent.**

When asserting a claim under Title II of the ADA, vicarious liability is not available to plaintiffs in order to prevail against a supervisor. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). However, the Plaintiff has not pled any set of facts that would establish deliberate indifference by Director Busby.

Addressing the deliberate indifference standard, the 11th Circuit Court explained:

> "Deliberate indifference," we have said, is an "exacting standard." *J.S.* 877 F.3d at 987. It requires proof that "the defendant knew that harm to a federally protected right was substantially likely and ... failed to act on that likelihood." *Liese*, 701 F.3d at 344 (citation omitted).

*Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019). Recently, the Court considered the issue of vicarious liability as applied to Title II in the context of deliberate indifference. In *Ingram v. Kubik*, 30 F.4th 1241 (11th Cir. 2022), a person who was arrested brought an action against a deputy sheriff, former sheriff, and the current sheriff. Addressing claims against the current sheriff, the Court said:

> We conclude that "*Gebser* provides the correct standard" under Title II. *See Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 349 (11th Cir. 2012). Under Title II, vicarious liability is unavailable; instead, the "narrower approach [in *Gebser*] ... requires the deliberate indifference of an *official* who at a minimum has *authority* to address the alleged discrimination and to institute corrective measures on the [entity's] behalf and who has *actual knowledge* of discrimination in the [entity's]

22

programs and fails adequately to respond." *See Id*. (alteration adopted) (internal quotation marks omitted).

*Id*. at 1259 (citing *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998). (Emphasis added).  The Plaintiff alleges no facts that would show that Director Busby had actual knowledge of alleged discrimination, the requisite authority to correct it, or failed to respond adequately.

First, as the Defendants showed previously, Director Busby has no authority to administer educational programs in Alabama.  For example, she cannot determine qualifications of teachers, what is to be taught, nor dictate what and how an IEP is to be implemented in any situation.  Consequently, the Plaintiff fails to show that Director Busby had the authority to address the alleged discrimination on behalf of SDHR or CCDHR.

Second, the Plaintiff cannot show Director Busby had actual knowledge of discrimination allegedly occurring in the RTFs and failed to respond adequately. While DOJ began investigating in June 2019, it did not conclude the investigation until October 12, 2022.  It reported no interim conclusions or concerns about the education of any child, specifically including X.W.  Even today, the SDHR, ALSDE and DOJ are engaging in good faith negotiations to address DOJ's concerns.  See Doc. 19-1, p. 3, ("We hope to continue our collaborative and productive relationship

23

[with the State's counsel and officials] as we resolve the violations described.") Even if the Plaintiff's factual allegations could show Director Busby had knowledge of some violation, engaging in a "collaborative and productive relationship" to resolve the concerns precludes any finding of deliberate indifference as required under *Gebser v. Lago Vista.* The Plaintiff's claim against CCDHR and Director Busby are due to be dismissed.

### E. The Amended Complaint Is Due To Be Dismissed For Failure To Name The Real Party In Interest.

The Amended Complaint is due to be dismissed because the minor identified as X.W. has not been properly identified. Rule 10(a) of the *Federal Rules of Civil Procedure* expressly requires plaintiffs to fully identify all parties in the pleadings:

> Every pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. *The title of the complaint must name all the parties*.

FED. R. CIV. P. Rule 10(a) (emphasis added). Rule 10(a) serves more than administrative convenience; it fulfills the public's legitimate interest in knowing all the facts involved, including the identities of the parties. See *Doe v. Frank*, 951 F.2d 320 (11th Cir. 1992).

In this case, the Plaintiff is "Sherry Bonner, as Mother and Legal Custodian of X.W., a minor." (Doc. 19, p. 1). Only the minor is alleged to have suffered injury.

The Plaintiff did not seek permission to proceed anonymously prior to filing her initial Complaint or the Amended Complaint. While certain circumstances may exist in which a court might allow a plaintiff to proceed anonymously, a plaintiff may do so only after receiving the court's permission, and such a request must be made either before, or contemporaneously with, the filing of the complaint. See *Estate of Rodriquez v. Drummond Co.*, 256 F. Supp. 2d 1250 (N.D. Ala. 2003) (where Judge Bowdre, pursuant to Rule 12 of the *Federal Rules of Civil Procedure*, dismissed the claims of unnamed plaintiffs who failed to seek court permission to proceed anonymously before doing so, holding that the district court had no jurisdiction over the parties.); see also *Barth v. Kaye*, 178 F.R.D. 371, 376 (N.D.N.Y. 1998) ( the court refused to allow the plaintiff to proceed anonymously because the plaintiff "failed to even request the privilege of proceeding anonymously, let alone make a showing that his factual situation warrants this special treatment.")

All anonymous pleadings filed prior to a court granting permission to proceed anonymously are in essence a nullity, and therefore *void ab initio*; it is the grant of permission that gives the court jurisdiction to consider the pleadings filed under a pseudonym. *Rodriquez*, 256 F. Supp. 2d at 1250; see also *M.M. v. Zavaras*, 139 F.3d 798, 801 (10th Cir. 1998) ("[A]bsent permission . . . to proceed anonymously . . . courts lack jurisdiction over the unnamed parties."); *National Commodity & Barter*

*Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989) (court lacked jurisdiction over unnamed plaintiffs who had not sought permission to proceed anonymously, "as a case had not been commenced with respect to them.").

Public policy considerations confirm that anonymous pleadings, filed without prior court permission, should not be allowed. The purpose of Rule 10(a) is to apprise all parties of their opponent's identities and to fulfill the public's legitimate interest in knowing the facts at issue in court proceedings. *See Rodriquez*, 256 F. Supp. 2d at 1256. A plaintiff must prove that a pseudonym is warranted before a court will allow a plaintiff to proceed anonymously. *Id*. A court cannot effectively determine whether a plaintiff's privacy concerns outweigh the defendant's and public's interests when the plaintiff has not even communicated its concerns to the court, much less made a showing that the factual situation warrants exception under the Rule.

Furthermore, as the Fourth Circuit Court of Appeals stated in *James v. Jacobson*, "the decision whether to permit parties to proceed anonymously at trial is one of many involving management of the trial process that for obvious reasons are committed in the first instance to trial court discretion." 6 F.3d 233, 238 (4th Cir. 1993). In managing the trial process in a case, a court may determine it is appropriate to impose conditions on a plaintiff's anonymity, such as requiring disclosure of the plaintiff's true identity under seal. See *M.M. v. Zavaras*, 139 F.3d at 801. Again, it is

difficult, if not impossible, for any court to determine what conditions are necessary or useful when the plaintiff has not communicated its concerns to the court. The allegations in this case are that the minor Plaintiff identified as X.W. was denied educational services and opportunities. There are no allegations of physical or sexual abuse or similar misconduct that could warrant anonymous proceedings. Requiring the Plaintiff to show reasons justifying anonymity is therefore particularly important. The mere allegation that the Plaintiff is a minor does not suffice.

Additionally, as the allegedly injured Plaintiff is unnamed, identified only as "X.W.," the principles of *res judicata* and collateral estoppel will be thwarted if this action is allowed to proceed anonymously. The Plaintiff seeks a judgment, yet the Defendants could not satisfy a potential judgment for the pseudonymous "X.W." if obtained. Also, nothing would prevent "X.W." from filing suit again using a different pseudonym, subjecting the Defendants to the possibility of civil double jeopardy. The well-established public policy considerations confirm that pleadings filed anonymously without prior court permission are, and should be, a nullity.

Finally, the Plaintiff's error cannot be cured by now filing a belated motion to proceed anonymously. In *Rodriquez*, plaintiffs filed an amended complaint with some parties using pseudonyms, the defendant filed a motion to dismiss, and the plaintiffs then filed a subsequent motion to proceed anonymously. *Rodriquez*, 256 F. Supp. 2d

at 1254. The court held that it did not have jurisdiction over the anonymous plaintiffs because they used pseudonyms without first obtaining court permission. *Id*. at 1255-56. Importantly, the court held that this procedural defect could not be cured by an order granting permission to proceed anonymously *nunc pro tunc*, as the defect was jurisdictional and could not be cured after the fact. *Id*.; see also *Y.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir. 2001) (finding that entry of a *nunc pro tunc* order granting permission to file under a pseudonym "cannot cure the failure to secure permission at filing.") Because the Plaintiff failed to secure at filing permission to proceed on behalf of an anonymous minor – the only allegedly injured party – divesting the court of jurisdiction in the first instance, the error is fatal to the Plaintiff's claims. Accordingly, the Amended Complaint is due to be dismissed.

WHEREFORE, PREMISES CONSIDERED, all claims against the Cleburne County Department of Human Resources and Director Marsha Busby in her official capacity are due to be dismissed.  In further support of this motion, Director Busby and CCDHR accept and incorporate by reference all grounds and authorities for dismissal asserted by SDHR and Commissioner Buckner.

/s/ Clay R. Carr
Clay R. Carr (CAR086)
Mark S. Boardman (BOA001)
BOARDMAN, CARR, PETELOS,
WATKINS, OGLE & HOWARD, P.C.
400 Boardman Drive
Chelsea, Alabama 35043-8211
Telephone:  (205) 678-8000
Facsimile:  (205) 678-0000

Along with:     Steve Marshall, Attorney General
Felicia Brooks, Chief Legal Counsel
Jonathan S. Schlenker, Deputy Attorney
General
Alabama Department of Human Resources
Legal Office
50 Ripley Street
P.O. Box 304000
Montgomery, Alabama 36130-4000
Telephone:  (334) 242-9330
Facsimile:   (334) 242-0689

*Attorneys for Defendants Commissioner Nancy Buckner, Cleburne County Department of Human Resources and Director Marsha Busby*

29

## **CERTIFICATE OF SERVICE**

I hereby certify that on **January 2, 2024**, I electronically filed the foregoing with the Clerk of Court using the CM-ECF electronic filing system which will send notification of such filing to the following counsel of record.  If any of the following are not registered with the CM-ECF electronic filing system, I certify that a copy will be served by mailing a copy of the same by United States Mail properly addressed and first class postage prepaid, to wit:

James Caleb Cunningham, Esq.
LEVIN, PAPANTONIO, RAFFERTY
316 S Baylen St.
Pensacola, FL 32502

Thomas Earl James, Esq.
TOMMY JAMES LAW
4220 Cahaba Heights Court; Suite 210
Birmingham, AL 35243

Jeremy Lynn Knowles, Esq.
MORRIS HAYNES, ATTORNEYS AT LAW
3500 Colonnade Parkway; Suite 100
Birmingham, AL 35243

Felicia Marshea Brooks, Esq.
Jonathan Scott Schlenker, Esq.
State of Alabama, Department of
Human Resources
50 Ripley Street;
Gordon Persons Bldg. Suite 2122
P.O. Box 30400
Montgomery, AL 36130-4000

James Robert Ward, III, Esq.
Jonathan Jason Swann, Esq.
Sara Margaret Rossmanith, Esq.
Alabama State Department of  Education
Office of General Counsel
P.O. Box 302101
Montgomery, AL 36130-2101

*s/Clay R. Carr*
Of Counsel