UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| SHERRY BONNER, as Mother and Legal Custodian of X. W., a minor )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ALABAMA DEPARTMENT OF )<br>HUMAN RESOURCES; )<br>NANCY BUCKNER, in her )<br>official capacity as the )<br>Commissioner of the Alabama )<br>Department of Human )<br>Resources; CLEBURNE COUNTY )<br>DEPARTMENT OF HUMAN )<br>RESOURCES; MARSHA BUSBY, in her )<br>official capacity as the Director of the )<br>Cleburne County Department of Human )<br>Resources; ALABAMA DEPARTMENT )<br>OF EDUCATION; STATE BOARD )<br>OF EDUCATION; ERIC MACKEY, in )<br>His official capacity as the State )<br>Superintendent of the Alabama )<br>Department of Education, et al., )<br>)<br>Defendants. ) | CASE NO.: **2:23-cv-00558** |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS CLEBURNE COUNTY DEPARTMENT OF HUMAN RESOURCES AND MARSHA BUSBY'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

INTRODUCTION

1

This suit seeks to ensure that X.W., and other children with qualifying disabilities, who require placements by the Alabama Department of Human Resources ("DHR") and the Alabama Department of Education ("DOE") are provided equal educational opportunities and are fully integrated with nondisabled peers. Defendants Cleburne County Department of Human Resources ("CCDHR") and Marsha Busby (collectively "Defendants") seek to avoid their liability by contending Plaintiff's complaint should be dismissed for lack of standing and failure to state a plausible claim for relief.[1] They should not be allowed to do so. As demonstrated more fully below, Plaintiff has stated a viable claim for violation of Title II of the Americans with Disabilities Act ("ADA") pursuant to 42 U.S.C. §12131 *et seq*, and has standing to bring this action against Defendants. It should be further noted that Defendants' motion is almost identical to Defendant Buckner's motion to dismiss[2] and should be denied for the same reasons.

Contrary to Defendants' assertions, the overwhelming body of case law available and clear legislative intent supports the viability and legitimacy of Plaintiff's claims. Not only does Plaintiff's Amended Complaint sufficiently plead every substantive fact necessary for a cause of action to proceed under Title II, but it also incorporates by reference and attachment the United States Department of

---

[1] Def's Mtn. Document 36 at 2
[2] Doc. 31

Justice ("DOJ") Report whose findings declare the very agencies being sued in this litigation in violation of the very mandates in Title II that are at issue in this case.[3]

## BACKGROUND

The entirety of Defendants' substantive arguments condenses down to "we are not responsible, someone else is," and "if we are responsible, Plaintiff did not say the magic words to hold us accountable for our failures." It is Defendants' position that they were not involved in the discrimination that befell X.W., that liability for that discrimination should all rest on the DOE. This argument fails on its face as detailed below.

X. W. is a minor child who was placed in several facilities by DHR, specifically CCDHR.[4] At the time DHR took custody of X. W., Defendants began to operate *in loco parentis*.[5] Plaintiff was placed in these facilities by CCDHR beginning in 2018, at least one of which was Sequel Tuskegee.[6] It is uncontested that Plaintiff is a person with a qualifying disability under Title II of the ADA.[7] While in these facilities, Plaintiff was not evaluated to determine what level of integration of public services Plaintiff's disability would allow and was instead

---

[3] FRCP 10(c) specifically allows that "a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."; Doc. 19-1.
[4] Doc. 19 at 4, 5, and 6
[5] *Ex Parte Kelley*, 296 So. 2d 822, (Ala. 2019); Doc. 19 at 5 and 6.
[6] *Id.* at 5 and 6.
[7] *Id.* at 3; Doc. 36 generally.

subjected to inferior educational opportunities, denied opportunities to engage with non-disabled peers, and was witness to or subjected to improper restraints.[8] The DOJ documented similar abuses across the State of Alabama in a published report in 2023.[9] Plaintiff endured the very abuses that were detailed in the DOJ report, which was attached to Plaintiff's Amended Complaint as Exhibit A.[10]

Marsha Busby is the Director of CCDHR and as such is the executive officer of CCDHR.[11] It is the duty of the county director, Defendant Busby, "… to formulate general policies, rules and regulations, which policies, rules and regulations must be consistent with the policies, rules and regulations of the state department."[12] County agencies of DHR, like CCDHR, are responsible for "the functions of a probation officer of the court having jurisdiction of children who are dependent, neglected, under insufficient guardianship or otherwise handicapped."[13] DHR is, among other things, responsible for "develop[ing] resources for the care of dependent, neglected, abused, or exploited clients and provid[ing] inspections of these resources for the purpose of ascertaining that their capacity and adequacy comply with prescribed standards.'[14] DHR is responsible for the enforcement of the Alabama Residential

---

[8] Doc. 19 at 4, 11, and 12.
[9] Doc. 19-1.
[10] *Id.*
[11] ALA. CODE §38-2-7
[12] *Id.* at §38-2-8(b)
[13] *Id.*
[14] ALA. ADMIN. CODE r. 660-1-2-.01(2)(e)(1983)

Facility Abuse Prevention Act, which requires among other things, quarterly inspections of facilities like the one X. W. was institutionalized in. Of particular note, the quarterly inspections should include DHR reviewing "the child's records associated with the facility, institution, or program including treatment, disciplinary, and other actions the department determines to be vital to his or her situational awareness as a parent or guardian."[15] This statute also states that DHR could request "the staff qualifications and proof of training", "the plan of operation, all written policies, procedures, and standard practices," and "proof of the implementation of childrens' needs and services plan".[16]

## ARGUMENT

### I.     LEGAL STANDARD

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[17] The complaint need not contain detailed factual allegations, but it must provide more than "a formulaic recitation of the elements of a cause of action."[18] Under Rule 8(a), the plaintiff must "give the defendant fair notice of what the …

---

[15] ALA. CODE § 38-15-7 (b)(3)
[16] ALA. CODE § 38-15-7 (a)(3),(5), and (6)
[17] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).
[18] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

claim is and the grounds upon which it rests."[19] In reviewing a complaint in the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the complaint is construed in the light most favorable to the non-moving part, and all facts alleged by the non-moving party are accepted as true."[20] Further, "[t]he threshold is 'exceedingly low' for a complaint to survive a motion to dismiss for failure to state a claim upon which relief can be granted."[21]

## II. PLAINTIFF HAS STATED PLAUSIBLE AND VIALBE CLAIMS FOR RELIEF

### a. Plaintiff has standing to sue Defendants and Defendants had authority over the education of X.W.

Defendants, incorrectly assert that Plaintiff lacks standing to sue Defendants. Defendants make thier argument predicated on the outrageous idea that they had no responsibility to the child that was in their agencies care and also that they had no power to effect X. W.'s education. To analyze standing, one would start at Article III of the Constitution. Article III limits the subject-matter jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. "To have a case or controversy, a litigant must establish that he has standing," which requires proof of three elements. *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019). The

---

[19] *Id.* At 555 (internal citation and quotation marks omitted).
[20] *AXA Equitable Life Inc. Co. v. Infinity Financial Group, LLC*., 608 F. Supp.2d 1349 at 1353, (S.D. Fla. 2009)(citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986))
[21] *Id.* (citing *Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir.1985)).

litigant must prove (1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).[22] Defendants argue, albeit incorrectly, that Plaintiff fails to meet these requirements because a different department, DOE is responsible for education and, thus, DHR is not involved.

No party disputes that the education provided to the minor child was anything but inadequate, and that the child was separated from his/her non-disabled peers. No party contests that the minor child is a person with a qualified disability under Title II of the ADA. It should be noted that in the seminal case, *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 583 (1999), the court stated that "institutional placement of persons who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life" and that "confinement in an institution severely diminishes the everyday life activities of individuals." In a later case, the 11th Circuit held that a Title II violation could occur even if a child is simply removed from a classroom for a part of the day.[23] In its decision, the court recognized intangible consequences of discrimination, including stigmatization and

---

[22] *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1255 (11th Cir. 2020).
[23] *J.S., III by and through J.S. Jr. v. Houston County Board of Education*, 877 F.3d 979 (11th Cir. 2017)

deprivation of opportunities for enriching interaction with fellow students.[24] X. W. suffered considerably more than a simple removal for part of the day of class, but rather suffered full-time isolation from his nondisabled peers. Compensatory damages are available to individuals suffering discrimination prohibited under the ADA.[25] Therefore, as to standing, the uncontested facts show injury and redressability. The only question remaining as to standing is whether Defendant CCDHR and Defendant Busby, the Director of CCDHR, the head of the local agency that regulates institutions such as X. W. was placed in, had custody of the minor child, placed the minor child into such institution, and was responsible at all times for the well-being of the minor child has any responsibility for the injuries suffered by the child while at the facility. The answer is unequivocal and resounding in the affirmative.

Despite Defendants spending many pages arguing that they have no responsibilities in cases such as this, Plaintiff finds a publication produced by DHR instructive as to its actual position, specifically "Minimum Standards For Residential Child Care Facilities" which is publicly available on DHR's state website as of the writing of this memorandum.[26] DHR's publication sets forth its minimum standards

---

[24] *Id.*
[25] 42 U.S.C. §12133
[26] This publication shall be attached and referred to as Plaintiff's "Exhibit B". Plaintiff is attaching it as an exhibit for ease of reference and access.

that are applicable to child care institutions such as the ones X. W. was institutionalized in.[27] In addition to being responsible for the standards of institutions such as the one X. W. was held in, DHR is responsible for a case file on each child which includes information regarding the child's education and "documentation of activities for each child in DHR's custody is participating on a monthly basis to ensure each child is being given adequate opportunities for participation in recreational, social, cultural, enrichment, and education activities."[28] Further, this DHR publication provides an entire subsection on educational and recreation activities.[29] Not only does DHR set the standards and licenses for facilities such as the one X. W. was held in, but it or one of its subsidiaries also had unique and total control over X. W. at the time the child was in the facility, a fact Defendants' motion seems eager to sidestep.

X. W. was in the custody of CCDHR when he/she was placed in the facility. He/she was placed in the facility by CCDHR, following the policies and procedures of DHR as interpreted by Defendant Busby. Ala. Code §38-2-6(10) specifically directs that DHR "aid such children [as the child herein] to a fair opportunity in life." This language taken with the other provisions of the chapter make clear DHR's vast powers over institutions dealing with children and make clear DHR's responsibilities

---

[27] Exhibit B pages 3, 6 and 7.
[28] *Id.* at 37.
[29] *Id.*

9

are ultimately the welfare of children. It would be impossible to discuss or control the welfare of children if education, a vital component of every child's life, was exempted from DHR's purview. Thus, while DHR is not alone in failing X. W. from an educational perspective, it does share in the liability for those failures.

### b. Plaintiff's Amended Complaint pleads deliberate indifference under the ADA.

Defendants argue incorrectly that she cannot be held liable under the ADA because did not have knowledge of Plaintiff's individual suffering. This argument is, of course, flawed and against the universal interpretation of the ADA. Plaintiff alleges in the Amended Complaint that Defendants violated Plaintiff's rights under Title II of the ADA. Title II states "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." U.S.C. §12132. In the current matter, there is no dispute that Plaintiff is a qualified individual with a disability. The 11th Circuit held in *J.S., III by & through J.S. Jr. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979 (11th Cir. 2017), that under Title II, "a plaintiff may establish intentional discrimination by showing deliberate indifference." The court determined that the standards are the same for Title II, Title IX and §504 [Rehabilitation Act].[30] "The Court further noted,

---

[30] *Id.*

"In the context of the Rehabilitation Act, intentional discrimination against the disabled does not require personal animosity or ill will… [it] may be inferred when a policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the challenged policy…or custom."[31] As such, actual knowledge that the Plaintiff is being discriminated against is not a requirement to be proven by the Plaintiff.

The current facts are squarely within the prohibition set forth by the Court in *J. S.* It is uncontested that Defendants, as part of DHR, were aware of the DOJ report before Plaintiff's Amended Complaint. It is further noteworthy that despite Defendants' assertion that Defendants are engaging in "good faith negotiations to address the concerns of DOJ"[32], the DOJ itself was less optimistic in its findings. The DOJ report cites a July 2020 report by the Alabama Disabilities Advocacy Program ("ADAP") that was published and which Defendant Buckner, head of DHR, was specifically aware.[33] The ADAP report documents rampant physical abuse and neglect within the Alabama system, but also documents concerns regarding education. "ADAP reported concerns about the quality of the educational services at the [facilities like the one X.W. was held in], including student reports

---

[31] *Id.* citing *Bartlett v. N.Y. State Bd. Of Law Exam'rs*, 156 F.3d 321, 331 (2d Cir.1998) *vacated on other grounds* 527 U.S. 1031, 119 Sect. 2388, 144 L.Ed.2d 790 (1999).
[32] Def's Mtn. Document 36 at 3.
[33] Plaintiff's Ex. A at page 4.

that 'they receive limited direct instruction and are provided worksheets that are not on grade level' even apart from the 'common occurrence' of there being no teacher available."[34] The DOJ in its report says that even after being made aware of the ADAP publication, Defendant Buckner and DHR did not identify any changes with respect to education services.[35] Simply put, Defendants cannot use the DOJ report as a shield to obscure and protect wrongful behavior over her tenure at the head of DHR; rather, the report is a light which should be used to expose the extent to which the discriminatory practices, such as those X. W. suffered, have been known, tolerated, and promulgated by Defendants. The notion that Defendants were unaware of the almost necessity of discrimination given its policies would be laughable were it not so disgraceful. It should be further noted that both the DOJ report and ADAP report are publicly available based on research and investigation of third parties. It is the very responsibility of DHR, CCDHR, and Defendant Busby to monitor these programs and regulate them to prevent such occurrences. Defendants cannot use what would at best be rank incompetence at their position and their organization as a defense from liability for the injury that such behavior has caused. A position of public trust as important as theirs demands more.

    c. **The Plaintiff has named the real party in interest.**

---

[34] *Id.*
[35] *Id.*

Defendants incorrectly claim that Plaintiff's case should be dismissed based on the fact the minor child, the subject of this case, was identified as X. W., and not by name. As noted in Plaintiff's complaint, X. W. is a minor child and lacks the capacity to bring suit on behalf of his/her own interests.[36] Further, even if X. W. could represent himself/herself, FRCP 5.2 only allows the initials of minor children to be used in filings with the court. Therefore, the Plaintiff, the mother of X. W., has brought this matter on X. W.'s behalf as mother and legal custodian. Rule 17 (c)(1) allows for a general guardian, committee, conservator, or a like fiduciary to file suit on behalf of a minor. Rule 17 (c)(2) allows a minor person who does not have a duly appointed representative to sue by a next friend or guardian ad litem. Section 6-5-390 of The Code of Alabama 1975 provides, " A father or a mother, provided they are lawfully living together as husband and wife, shall have an equal right to commence an action for an injury to their minor child, a member of the family; provided, however, that in the event such mother and father are not lawfully living together as husband and wife, or in the event legal custody of such minor child has been lawfully vested in either of the parties or some third party, then and in either event the party having legal custody of such minor child shall have the exclusive right to commence such action." In the current matter, Plaintiff Sherry Bonner is the

---

[36] Doc. 19 at 4.

mother and has sole legal custody of X. W. Thus, she is the proper party to bring an action on behalf of X. W.

## CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss Plaintiff's Amended Complaint should be denied in its entirety.

Dated: January 23, 2024

Respectfully submitted,

/s/ Thomas E. James
Thomas E. James ASB-2609-E66T
*Attorney for Plaintiff*

**OF COUNSEL**:
**TOMMY JAMES LAW**
4220 Cahaba Heights Court – Suite 210
Birmingham, Alabama 35243-5731
Telephone:  (205) 259-1725
tommy@tommyjameslaw.com

/s/ Jeremy Knowles
Jeremy Knowles ASB-3065-W86J
*Attorney for Plaintiff*

**OF COUNSEL:**
**MORRIS HAYNES, Attorneys at Law**
3500 Blue Lake Drive – Suite 200
Birmingham, Alabama 35243
Telephone:  (205) 324-4008
Facsimile:   (205) 324-0803
jknowles@mhhlaw.net

/s/ *James Caleb Cunningham*
James Caleb Cunningham
ASB-6629-C83U
*Attorney for Plaintiff*

**OF COUNSEL**:
Levin, Papantonio, Rafferty, Proctor,
Buchanan, O'Brien, Barr & Mougey, P. A.
316 South Baylen Street
Suite 600
Pensacola, Florida  32502
Email: ccunningham@levinlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served the forgoing on the following by filing electronically via the CM/ECF e-filing system and/or by placing a copy thereof, addressed as indicated below, in the United States Mail, First Class postage prepaid on this the 24th day of January 2024.

Felicia M. Brooks, Esq.
Chief Legal Counsel
Jonathan S. Schlenker, Esq.
Deputy Attorney General
State of Alabama Dept of Human Resources
P O Box 3040000
Montgomery, Alabama 36130-4000
Felicia.Brooks@dhr.alabama.gov
Jonathan.schlenker@dhr.alabama.gov
*Attorneys for Defendant Buckner*

Sara M. Rossmanith, Esq.
James Robert Ward, III, Esq.
Jonathan Jason Swann, Esq.
Peggy.rossmanith@alsde.edu
Alabama State Dept of Education
Office of General Counsel
P O Box 302101
Montgomery, AL 36130-2101
Jward01@alsde.edu
jswann@alsde.edu
*Attorneys for Defendant Mackey, Defendant Alabama Dept of Education, Defendant State Board of Education*

Mark S. Boardman, Esq.
Clay R. Carr, Esq.
Katherine H. Watkins, Esq.
Boardman, Carr, Petelos, Watkins, Ogle & Howard, P.C.
400 Boardman Drive
Chelsea, Alabama 35043
mboardman@boardmancarr.com
ccarr@boardmancarr.com
khortberg@boardmancarr.com
*Attorneys for Defendant Buckner, Defendant Busby, Defendant Cleburne County DHR*

                                            */s/ Jeremy Knowles*
                                            Of Counsel