UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| SHERRY BONNER, as Mother and Legal Custodian of X. W., a minor ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | CASE NO.: **2:23-cv-00558** |
| ALABAMA DEPARTMENT OF HUMAN RESOURCES; NANCY BUCKNER, in her official capacity as the Commissioner of the Alabama Department of Human Resources; CLEBURNE COUNTY DEPARTMENT OF HUMAN RESOURCES; MARSHA BUSBY, in her official capacity as the Director of the Cleburne County Department of Human Resources; ALABAMA DEPARTMENT OF EDUCATION; STATE BOARD OF EDUCATION; ERIC MACKEY, in His official capacity as the State Superintendent of the Alabama Department of Education, et al., ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS ALABAMA STATE DEPARTMENT OF EDUCATION AND ALABAMA STATE BOARD OF EDUCATION'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**INTRODUCTION**

1

This suit seeks to ensure that X. W., and other children with qualifying disabilities, who require placements by the Alabama Department of Human Resources ("DHR") and the Alabama Department of Education ("DOE") are provided equal educational opportunities and are fully integrated with their nondisabled peers. Defendants Alabama State Board of Education ("SBOE") and DOE (collectively "Defendants") seek to avoid liability by contending Plaintiff's complaint should be dismissed for failure to state a plausible claim for relief.[1] He should not be permitted to do so. As demonstrated more fully below, Plaintiff has stated a viable claim for violation of Title II of the Americans with Disabilities Act ("ADA") pursuant to 42 U.S.C. §12131 *et seq*.

Contrary to Defendants' assertions, the overwhelming body of case law and clear legislative intent supports the viability and legitimacy of Plaintiff's claims. Not only does Plaintiff's Amended Complaint sufficiently plead every substantive fact necessary for a cause of action to proceed under Title II, but it also incorporates by reference and attachment the Department of Justice Report which findings declare the very agencies being sued in this litigation are in violation of the very mandates in Title II that are at issue in this case.[2] It should also be noted that these arguments

---

[1] Def's Mtn. Document 34 at 2.
[2] FRCP 10(c) specifically allows that "a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."; Doc. 19-1.

2

are the same as arguments put forth by Defendant Mackey in his motion to dismiss and fail on the same grounds.

## BACKGROUND

Defendants' substantive arguments condense down to weaponized incompetence. Defendants' position is that the system they designed and enforced was so haphazard and so unregulated that any discrimination that occurred was incidental: because we failed to evaluate everyone, we cannot be responsible to anyone. Defendants argue that its knowledge of the general failures in DOE's system does not create liability on its part for the specific suffering of children like X. W., even though those failures guarantee the victimization of the same children. This argument fails on its face.

X. W., a child, was taken into custody by the State of Alabama through DHR, specifically Cleburne County Department of Human Resources ("CCDHR").[3] At such time, the State through DHR began to operate *in loco parentis*.[4] The child, unable to fend for himself/herself, necessarily and completely relied on the State through its various agencies for protection, education, and general welfare. Once in custody of the State, the State was the sole arbiter of the fate of the child, and it decided to place the child into a facility, an institution, segregated away from peers,

---

[3] Doc. 19 at 4,5, and 6
[4] *Ex Parte Kelley,* 296 So. 2d 822, (Ala. 2019); Doc. 19 at 5 and 6.

family, and all things known to the child. While at the institutions, the child suffered greatly in many respects, not the least of which was a lack of education and integration. The child, without a guardian or parent other than the State, was left to survive as best as he/she could in such an environment. At a date determined by the State, the child was eventually released, stunted and injured by the horrible experiences of the institutionalization.

In the seminal case, *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 583 (1999), the Court stated that "institutional placement of persons who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life" and that "confinement in an institution severely diminishes the everyday life activities of individuals." In a later case, the 11th Circuit held that a Title II violation could occur even if child is simply removed from a classroom for a day.[5] In its decision, the court recognized intangible consequences of discrimination, including stigmatization and deprivation of opportunities for enriching interaction with fellow students.[6]

X. W. is a minor child who was placed in several facilities by DHR, specifically CCDHR.[7] X. W. was placed in these facilities by CCDHR beginning in

---

[5] *J.S., III by and through J.S. Jr. v. Houston County Board of Education*, 877 F.3d 979 (11th Cir. 2017).
[6] *Id.*
[7] Doc. 19 at 4 and 6.

2018, at least one of which was Sequel Tuskegee.[8] It is uncontested that X. W. is a person with a qualifying disability under Title II of the ADA.  While in such facilities, X. W. was not evaluated to determine what level of integration of services X. W.'s disability would allow and was instead subjected to inferior educational opportunities, denied opportunities to engage with non-disabled peers and was witness to or subjected to improper restraints.[9] The U.S. Department of Justice ("DOJ") documented similar abuses across the State of Alabama in a published report in 2023.[10] Plaintiff endured the very abuses that were detailed in the DOJ report, which was attached to Plaintiff's Amended Complaint as Exhibit A.[11]

Defendant Erik Mackey is the Superintendent of the DOE and, as such, is the chief executive officer of DOE. DOE is responsible by statute for educational work in facilities such as the ones in which X. W. resided. DOE also certifies the compliance of facilities, such as the ones X. W. resided in, regarding staff qualifications and curriculum.[12] SBOE exercises through the superintendent and his assistants, general control and supervision over the public schools of the state.[13] Further, the SBOE has general supervision of the education work of all charitable,

---

[8] *Id.* at 5 and 6
[9] *Id.* at 4, 11, and 12.
[10] Doc. 19-1.
[11] *Id.*
[12] Ala. Admin. Code 290-8-8.04; also Doc. 19 at 6 and 7.
[13] Ala. Code § 16-3-11.

penal, reformatory and child-caring institutions, maintained in whole or in part by the state.[14]

## ARGUMENT

### I. LEGAL STANDARD

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[15] The complaint need not contain detailed factual allegations, but it must provide more than "a formulaic recitation of the elements of a cause of action."[16] Under Rule 8(a), the plaintiff must "give the defendant fair notice of what the … claim is and the grounds upon which it rests."[17] In reviewing a complaint in the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."[18] Further, "[t]he threshold is 'exceedingly low' for a complaint to survive a motion to dismiss for failure to state a claim upon which relief can be granted."[19]

---

[14] *Id.* at §16-3-20
[15] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).
[16] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[17] *Id.* At 555 (internal citation and quotation marks omitted).
[18] *AXA Equitable Life Inc. Co. v. Infinity Financial Group, LLC.*, 608 F. Supp.2d 1349 at 1353, (S.D. Fla. 2009)(citing *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 91 L.Ed.2d 59 (1984); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986))
[19] *Id.* (citing *Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir.1985)).

## II. PLAINTIFF HAS STATED PLAUSIBLE AND VIABLE CLAIMS FOR RELIEF

### a. The Amended Complaint Pleads Sufficient Facts to Support a Claim of Deliberate Indifference under Title II of the ADA

X. W. alleges in the Amended Complaint that Defendants violated X. W.'s rights under Title II of the ADA. Title II states "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." U.S.C. §12132. In the current matter, there is no dispute that X. W. is a qualified individual with a disability. The 11th Circuit held in *J.S., III by & through J.S. Jr. v. Houston Cnty. Bd. of Educ.,* 877 F.3d 979 (11th Cir. 2017), that under Title II, "a plaintiff may establish intentional discrimination by showing deliberate indifference." The Court determined that the standards are the same for Title II, Title IX and §504 [Rehabilitation Act].[20] "To recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant…We now determine that the deliberate indifference standard applies."[21] "In the context of the Rehabilitation Act, intentional discrimination against the disabled does not require personal animosity or ill will… [it] may be ***inferred*** when a policymaker acted with

---

[20] *Id.*
[21] *Id.* citing *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir.2001).

7

at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the challenged policy…or custom."[22]

The current case is squarely within the bounds of this established precedent. Defendants knew of the substandard education and discrimination that was occurring in facilities around the State of Alabama.[23] The DOJ report, which clearly states that the ADA had been violated, was mailed directly to the general counsel of DOE in 2022. The report quotes an Alabama State Board of Education meeting from 2019 wherein the then Deputy State Superintendent of Education acknowledged the most high-level Title II failures.[24]

Defendants attempt to argue that they were not specifically aware of *this* plaintiff and *this* plaintiff's suffering and, therefore, should not be held responsible for the injuries that befell X.W. Stated another way, Defendants argue that since they completely failed every child in its custody from a Title II perspective – and others – they actually failed none of them. This argument is absurd. Should Defendants position be correct, no agency would ever attempt to comply with the ADA. Using Defendants' logic, so long as no attempt at ADA compliance was made and no policy

---

[22] *Id.* citing *Bartlett v. N.Y. State Bd. Of Law Exam'rs*, 156 F.3d 321, 331 (2d Cir.1998) *vacated on other grounds* 527 U.S. 1031, 119 Sect. 2388, 144 L.Ed.2d 790 (1999) (emphasis added).
[23] Doc. 19-1 at 2, 5, 16, and 18
[24] While this is cited in the DOJ report, the underlying video is no longer available on the state website and thus unavailable to Plaintiff.

enacted, a defendant could never be found liable. Defendants knew the "system" was a failure; knew, in fact, there really was no system at all to ensure children such as X. W. would ever be evaluated or given access to public education and services. DOE made no good faith effort to include X. W. and made no effort to evaluate X. W. It is a necessary conclusion that such failures by Defendants would negatively affect children it had assumed full legal responsibility for, including X. W.

Plaintiff's research has found no court that has ever imposed such an onerous requirement to plead a Title II claim. There is simply no basis in law or common sense that would support the idea that X. W. must specifically notify Defendants of X. W.'s specific situation, as was occurring, and only then be able to recover. This is especially true in a situation where the only other children X. W. came into daily contact with were experiencing exactly the same level of educational neglect. In short, Defendants knew that there were thousands of children affected by these failures and did nothing. The Defendants cannot now argue that had this single child written a letter to notify them of the failures, like the DOJ did, that the Defendants would have remedied X. W.'s situation. It is enough that Defendants knew the policy was discriminatory and that the execution of the policy was discriminating against thousands of children in Alabama, including X. W. At a minimum, this issue is a question of fact that should be addressed at summary judgment rather than through a 12(b)(6) motion.

### b. Plaintiff's Amended Complaint Sufficiently Alleges a Failure to Satisfy the ADA's Integration Mandates

Defendants argue that Plaintiff's Amended Complaint should be dismissed because it fails to allege a treatment professional's opinion that a more integrated setting was appropriate for X. W.[25] Defendants incorrectly assert that the Supreme Court requires this in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1991).[26] Defendants conveniently ignore the fact that "since *Olmstead*, lower courts have universally rejected such an absolutist interpretation."[27] In *Frederick L. v. Dep't of Pub. Welfare*, 157 F.Supp.2d 509, 539-40 (E.D. Pa. 2001), the Court denied the defendant's motion to dismiss *Olmstead* claims and rejected the argument that *Olmstead* requires a formal recommendation for community placement. The Eastern District of New York went further in *Disability Advocates, Inc. v. Paterson*, 653 F.Supp.2d 184, 258-59 (E.D.N.Y. 2009) stating that "requiring a determination by treating professionals, who are contracted by the State, 'would eviscerate the integration mandate' and 'condemn the placements of [individuals with disabilities in adult homes] to the virtually unreviewable discretion' of the State and its contractors."[28] Simply put, Defendants' argument that *Olmstead* requires a treatment professional's determination that Plaintiff could benefit from community-based

---

[25] Doc. 34 at 12 and 13
[26] *Id.*
[27] *United States v. Georgia*, 461 F. Supp. 3d 1315 (2020).
[28] *Id.* citing *Disability Advocates, Inc. v. Paterson*, 653 F.Supp.2d 184, 258-59 (E.D.N.Y. 2009).

treatment, is false. Such an argument misinterprets *Olmstead* and has universally failed to sway courts across the country. To read in such a requirement as Defendant suggests would enable the State through agencies such as DOE and DHR to permanently trap disabled individuals, such as X. W., depriving them of their rights under the ADA forever. While this dystopian scenario may be the wish of Defendants, it is, thankfully, not the reality of the law.

### c. The Plaintiff Has Named the Real Party in Interest.

Defendants claim, incorrectly, that Plaintiff's case should be dismissed based on the fact the minor child, the subject of this case, was identified as X. W., and not by name. As noted in Plaintiff's complaint, X. W. is a minor child and lacks the capacity to bring suit on behalf of his/her own interests.[29] Further, even if X.W. could represent himself, FRCP 5.2 only allows the initials of minor children to be used in filings with the court. Therefore, the Plaintiff, the mother of X.W., has brought this matter on X.W.'s behalf as mother and legal custodian. Rule 17 (c)(1) allows for a general guardian, committee, conservator, or a like fiduciary to file suit on behalf of a minor. Rule 17 (c)(2) allows a minor person who does not have a duly appointed representative to sue by a next friend or guardian ad litem. Section 6-5-390 of The Code of Alabama 1975 provides, " A father or a mother, provided they

---

[29] Doc. 19 at 4

are lawfully living together as husband and wife, shall have an equal right to commence an action for an injury to their minor child, a member of the family; provided, however, that in the event such mother and father are not lawfully living together as husband and wife, or in the event legal custody of such minor child has been lawfully vested in either of the parties or some third party, then and in either event the party having legal custody of such minor child shall have the exclusive right to commence such action." In the current matter, Plaintiff Sherry Bonner is the mother and has sole legal custody of X. W.  Thus, she is the proper party to bring an action on behalf of X.W.

## CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss Plaintiff's Amended Complaint should be denied in its entirety.

Dated: January 23, 2024

Respectfully submitted,

*/s/ Thomas E. James*
Thomas E. James ASB-2609-E66T
*Attorney for Plaintiff*

**OF COUNSEL**:
**TOMMY JAMES LAW**
4220 Cahaba Heights Court – Suite 210
Birmingham, Alabama 35243-5731
Telephone:  (205) 259-1725
tommy@tommyjameslaw.com

/s/ *Jeremy Knowles*
Jeremy Knowles ASB-3065-W86J
*Attorney for Plaintiff*

**OF COUNSEL:**
**MORRIS HAYNES, Attorneys at Law**
3500 Blue Lake Drive – Suite 200
Birmingham, Alabama 35243
Telephone:  (205) 324-4008
Facsimile:   (205) 324-0803
jknowles@mhhlaw.net

/s/ *James Caleb Cunningham*
James Caleb Cunningham
ASB-6629-C83U
*Attorney for Plaintiff*

**OF COUNSEL**:
Levin, Papantonio, Rafferty, Proctor,
Buchanan, O'Brien, Barr & Mougey, P. A.
316 South Baylen Street
Suite 600
Pensacola, Florida  32502
Email: ccunningham@levinlaw.com

13

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have served the forgoing on the following by filing electronically via the CM/ECF e-filing system and/or by placing a copy thereof, addressed as indicated below, in the United States Mail, First Class postage prepaid on this the 23rd day of January 2024.

Felicia M. Brooks, Esq.
Chief Legal Counsel
Jonathan S. Schlenker, Esq.
Deputy Attorney General
State of Alabama Dept of Human Resources
P O Box 3040000
Montgomery, Alabama 36130-4000
Felicia.Brooks@dhr.alabama.gov
Jonathan.schlenker@dhr.alabama.gov
*Attorneys for Defendant Buckner*

Sara M. Rossmanith, Esq.
James Robert Ward, III, Esq.
Jonathan Jason Swann, Esq.
Peggy.rossmanith@alsde.edu
Alabama State Dept of Education
Office of General Counsel
P O Box 302101
Montgomery, AL 36130-2101
Jward01@alsde.edu
jswann@alsde.edu
*Attorneys for Defendant Mackey, Defendant Alabama Dept of Education, Defendant State Board of Education*

Mark S. Boardman, Esq.
Clay R. Carr, Esq.
Katherine H. Watkins, Esq.
Boardman, Carr, Petelos, Watkins, Ogle & Howard, P.C.
400 Boardman Drive
Chelsea, Alabama 35043
mboardman@boardmancarr.com
ccarr@boardmancarr.com
khortberg@boardmancarr.com
*Attorneys for Defendant Buckner, Defendant Busby, Defendant Cleburne County DHR*

                                                  */s/ Jeremy Knowles*
                                                  Of Counsel